■ In the Matter of DONOVAN E. KRETSER, Appellant, v ANN M. KRETSER, Also Known as YAMUNA DUJANY, Respondent. — Appeal from an order of the Family Court of Rensselaer County (Reeves, J.), entered April 28, 1981, which, *inter alia,* ordered petitioner to furnish support as provided in the separation agreement and divorce decree between the parties. Petitioner and respondent were formerly married to each other and are the parents of a daughter, Maia Marie Kretser, born on March 1, 1972. On January 23, 1974 the parties executed a separation agreement, the terms of which were incorporated into, but not merged in, a judgment of divorce rendered on July 25, 1975. Pursuant to the agreement, respondent was given care, custody and control of the parties' child during her minority, subject to extensive and detailed rights of temporary custody or visitation given to petitioner, and with these circumstances prevailing on September 12, 1980 respondent and the child left New York and took up residence in California. In response, by an order to show cause obtained at a Special Term of Supreme Court in Rensselaer County on September 19, 1980, petitioner commenced the instant proceeding wherein he seeks an order suspending his alimony and child support payments under the agreement *nunc pro tunc* from September 12, 1980. He bases his argument upon respondent's move to California with the child which he alleges was in violation of his rights to temporary custody of the child as specified in the agreement. After the matter was transferred to Family Court and a hearing was held thereon, however, Family Court ordered petitioner to furnish support as provided in the agreement, and the present appeal ensued. We hold that the challenged order should be affirmed. In so ruling, we initially note that it is questionable upon the instant record whether respondent did breach the separation agreement by moving to California with her daughter. Regarding this issue, it is significant that the agreement specifically provided that neither party should remove the child from the country without the other party's consent, thereby inferring that the child could be moved from State to State without consent. Additionally, each of the parties was given maximum freedom in choosing his or her own individual place of residence as long as the choice did not violate another provision of the agreement, and while under certain specified conditions payments of alimony and support were to cease, none of these related to the removal of the child to another State. The evidence also indicates that respondent did not move to California to spite petitioner or to deny him the opportunity to exercise his rights to temporary custody of the child and that she is still willing to co-operate with him in the exercise of those rights. Given all these circumstances, even though petitioner's exercise of his temporary custody rights has obviously been rendered more difficult by respondent's action, we cannot say that Family Court abused its discretion in directing petitioner to continue to furnish support as provided in the separation agreement (cf. *Conrad v Conrad,* 64 AD2d 751, app dsmd 46 NY2d 849; see, also, *Strahl v Strahl,* 49 NY2d 1036). For the reasons just stated we cannot accept the rationale of the dissenting opinion to the effect that the relief sought by petitioner should be granted, and there is likewise not a sufficient basis in the present record for directing respondent to return to New York or for holding hearings relative to the advisability of continuing the existing custodial arrangements. In this regard, it is noteworthy that petitioner has requested in this proceeding only the suspension of his alimony and child support payments under the separation agreement, and he has not sought to compel respondent to return to New York or to change the agreement's provisions for

the custody of the parties' child. Additionally, it is also most significant that there has been presented no evidence indicating that respondent is not a loving mother who is willing and able to care for her child, and while the dissent places great emphasis upon respondent's religious and philosophical beliefs and practices, these beliefs and practices certainly do not establish respondent to be an unfit mother, nor do they justify this court's directing, *sua sponte*, a hearing upon the issue of custody. Lastly, examination of the record does not establish a clear violation of the separation agreement by respondent as claimed in the dissenting opinion. As previously noted, respondent is entitled under the agreement to live wheresoever she desires and petitioner's consent is not required for the removal of the child to another State. Also, petitioner was informed as to the whereabouts of his child immediately after the move to California by respondent on September 12, 1980. That same night petitioner admittedly learned of the move to California and, according to his brief, he was out of communication with respondent and the child only until six days later on September 18, 1980. Order affirmed, with costs. Mahoney, P. J., Main and Yesawich, Jr., JJ., concur; Kane and Mikoll, JJ., dissent in the following memorandum by Kane, J.

Kane, J. (dissenting). A wife's right to receive support under the terms of a separation agreement may be terminated if she violates the father's rights of visitation (*Conrad v Conrad*, 64 AD2d 751, app dsmd 46 NY2d 849). The violation may be of a specific term of the agreement or of a right implied therein (*Walsh v Walsh*, 64 AD2d 980; *Abraham v Abraham*, 44 AD2d 675). While court authorization and an inquiry into the particular facts and circumstances are required to determine whether visitation rights have been impaired (*Murza v Murza*, 85 AD2d 687), at such hearing, considerations of a change of custodial arrangements can be made if it appears the acts of the custodial parent are inconsistent with the best interests of the child (Family Ct Act, § 652; *Entwistle v Entwistle*, 61 AD2d 380, app dsmd 44 NY2d 851). The record of the proceedings before the Family Court in this case reveals the following salient facts. The separation agreement executed by the parties provided for "temporary custody" with petitioner father being awarded part of one weekday per week, two weekends per month, alternate holidays, two weeks in the summer and one week in the winter. He scrupulously exercised these rights over a five-year period until respondent and her daughter went to Florida, not for a two-month period previously agreed upon, but for six months. During this time, contact with his daughter required petitioner to fly to Florida. When mother and daughter returned in the spring of 1980, they located at a camp in Sullivan County, operated by the SYDA Foundation Ashram at South Fallsburg, New York, where respondent mother pursued a course of study of yoga and philosophy under the guidance of the Lord Baba Moktananda and another teacher, Paramahamsa. The mother's pursuit of learning made contact with the daughter more difficult for petitioner and also contributed to the deterioration of the relationship between the parties. This atmosphere persisted throughout the summer months and finally, on September 12, 1980, respondent and daughter surreptitiously departed for California without notice to petitioner. On the day they left, petitioner had made arrangements to visit his daughter at South Fallsburg, and appeared late that afternoon only to find that she and respondent had departed at 11:00 A.M. that morning without leaving information as to their destination in California. An application pursuant to section 241 of the Domestic Relations Law suspending payment of alimony was obtained by order to show cause dated September 19, 1980 *nunc pro tunc* to September 12, 1980. The proceeding was thereafter transferred to Family Court for a hearing and determination of factual issues. The hearing was held, at which petitioner and respondent were the only

witnesses. Thereafter, Family Court, in a decision and order, directed petitioner to continue payment of support as provided by the separation agreement, but made no findings of fact or conclusion of law with respect to any of the matters raised by the evidence produced at the hearing. In view of the legal principles set forth, we find it difficult to conclude that this naked decision and order suffices to resolve the important issues presented in this proceeding. For example, at the hearing, respondent testified that she went to California to continue her meditation studies with the guru, living in a place "off the beach in Santa Monica" at a meditation center provided by the Ashram. She also testified that the water near the beaches is so foul from people dumping garbage in the water that swimming is avoided and play on the beach is limited. Respondent described the water as "not a healthy place to be" and was concerned about reports of illness suffered by lifeguards at the area. Moreover, there was testimony by respondent of her commitment to the teachings of the SYDA Foundation and the Guru Moktananda with an indication that she might follow him with her daughter to other locations, possibly even to his native land of India. Under the circumstances, additional inquiry seems mandated to assure that existing custodial arrangements are in the best interest of this 10-year-old child. As to the specific terms of the separation agreement, since the right of visitation has become virtually impossible by reason of respondent's removal to California, it seems clear there has been a breach of rights granted the husband, at least by implication, under the terms of that agreement (*Walsh v Walsh, supra*). Moreover, her departure to California, without notice and without any effort to inform plaintiff of her whereabouts, was a clear violation of a specific term of the agreement. Finally, since there were no reasons set forth by the Family Court for its decision, this court is empowered to make the determination which should have been made in the first instance (*Shipman v Words of Power Missionary Enterprises*, 54 AD2d 1052) after the hearing. Accordingly, the relief sought by petitioner should be granted and respondent directed to return to the State of New York where petitioner can exercise his visitation rights, and further hearings may be held on the issue of the best interests of the child under existing custodial arrangements.