■ In the Matter of KATRINA C. YEO, Appellant, v MICHAEL J. CORNAIRE, Respondent. — Appeal from an order of the Family Court of Rensselaer County (Dixon, J.), entered March 6, 1982, which, *inter alia,* continued joint custody of the parties' children but decreed that the principal residence of the children should be with the respondent father. Petitioner and respondent were divorced in December, 1979. Pursuant to a separation agreement which was incorporated, but not merged, in the divorce decree, joint custody was established over the couple's three children, Kimberly, now age 13, James, age 9, and Jason, age 6. The children's principal place of residence was to be with petitioner, their mother. Respondent was to have custody on alternate weekends and holidays and for three weeks during summer vacation. In 1980, the Saratoga County Family Court, in a proceeding to enforce provisions of the divorce decree, dismissed respondent's cross petition seeking sole custody of the children. In June, 1981, petitioner remarried and shortly thereafter decided to move to California so that her new husband, John Yeo, who before the marriage had been searching for work there, could take advantage of an employment opportunity as a fund raiser for a theatre complex. She instituted this proceeding to modify the respondent's visitation rights in light of the great distance which would separate the children from their father after the move. Respondent cross-petitioned for sole custody of the children or, in the alternative, an injunction restraining the proposed move. In September, 1981, the court granted respondent temporary custody of the children pending its decision. In the meantime, petitioner and her husband moved to California in accordance with the court's suggestion so that they could establish a home there. Following extensive hearings, *in camera* interviews of the three Cornaire children, and consideration of the reports of probation officers, teachers, psychologists, and the children's court-appointed Law Guardian, the court continued joint custody, but altered the children's principal place of residence

so that they could remain with their father in New York. Petitioner was afforded extensive visitation rights including custody for six weeks during the summer, one week during either the Christmas or winter holiday, and liberal access to the children during any time petitioner visited the northeast. Transportation costs incurred in petitioner's exercise of her visitation rights were to be divided equally. We affirm. The emerging rule in these cases is that a geographic move will not be allowed to effectively deprive a parent of regular access to a child (see *Weiss v Weiss*, 52 NY2d 170; *Daghir v Daghir*, 82 AD2d 191, affd 56 NY2d 938; *Strahl v Strahl*, 66 AD2d 571, affd 49 NY2d 1036). However, as in all custody matters, there are no absolutes and each situation must be resolved on a case-by-case basis after consideration of the totality of the circumstances with special emphasis being placed upon the best interests of the child and the stability of the home environment (*Friederwitzer v Friederwitzer*, 55 NY2d 89, 95; *Munford v Shaw*, 84 AD2d 810, 811). On the record presented, we cannot say that the decision below was erroneous. Significantly, the parties' separation agreement provided for *joint* custody (cf. *Matter of Kretser v Kretser*, 91 AD2d 797). By entering such agreement, they clearly envisaged that respondent would have an ongoing and meaningful relationship with each of his three children with the opportunity to see them approximately 80 days each year. He cultivated just such a relationship through regular use of his visitation rights and by caring for the children when petitioner encountered personal difficulties during the summer of 1980. The move to California would effectively destroy any chance respondent has to maintain regular substantial access to his children. Neither his work schedule, nor his financial resources can tolerate the extensive travel which would be entailed in continuing his important and needed role in the children's lives (compare *Todaro v Todaro*, 76 AD2d 816; *Cmaylo v Cmaylo*, 76 AD2d 898, app dsmd 51 NY2d 770). Furthermore, the testimony and various reports before the court amply support the conclusion that it is in the children's best interests for them to reside with respondent. While both parents are clearly fit to raise the children, it is apparent that a move from familiar surroundings would adversely affect the emotional well-being of the two older children who are only now beginning to enjoy the stability so vital to normal development. This is evidenced by improvement in school and the attainment of some degree of tranquility in their personal lives. Based upon information from all sources, including *in camera* interviews with the children, they have been living quite contentedly with respondent, his new wife, and her three children from a previous marriage. While the record is unclear as to the compelling necessity for Mr. Yeo's move to California, we hesitate to disturb the lower court's finding that Yeo had failed to exhaust all job possibilities in the northeast and had actually turned down an opportunity in Rhode Island because it involved earning what he considered to be an inadequate salary. That finding involved an evaluation of testimony, character and sincerity which is best made at the trial level and is to be accorded the greatest respect (*Eschbach v Eschbach*, 56 NY2d 167, 173). What is clear, however, is that Mr. Yeo has an uncertain employment history, is currently engaged on a one-year contract, and will be working at a salary level which raises genuine doubt as to his ability to maintain a household of four children,[*] even if it is assumed that the Yeos' budget is augmented by support payments for the Cornaire children. In holding as we do, we do not mean to imply that every move in the absence of compelling economic circumstances will provide the grounds for a change in custody. But when, as here, there is to be a serious disruption in an ongoing and important parent-child relationship, a "dramatic change of locale" is not to be countenanced unless the reasons for the change are most compelling (see

---

[*] At the time of the Family Court hearing the Yeos were expecting a child.

*Weiss v Weiss, supra,* p 177). While no one of the factors adverted to is determinative of the outcome, our view of the totality of the circumstances leads us to conclude that petitioner's move to California was a "countervailing circumstance" which justified changing the primary residence of the children (*Friederwitzer v Friederwitzer, supra,* p 95; see *Matter of Bonnaci v Bonnaci,* 89 AD2d 634). Petitioner contends that the result below was improper because the separation agreement did not explicitly prohibit her from making a geographical move. No specific provision was necessary because a move of the character proposed would effectively deny respondent the right to continue to enjoy joint custody and thwart his basic natural right of access to his children (*Strahl v Strahl,* 66 AD2d 571, 579, *supra; Matter of Denberg v Denberg,* 34 Misc 2d 980, 985). We find unpersuasive the argument that the provision of the separation agreement requiring respondent to pay the children's travel expenses "in the event of relocation of the 'Wife' " exhibited respondent's willingness to allow petitioner total freedom of movement. A fundamental purpose of the separation agreement was to establish meaningful joint custody of the three Cornaire children; that custody relationship would be destroyed here if the children were to go to California. *Martinez v Konczewski* (85 AD2d 717, affd 57 NY2d 809) is factually distinguishable. In that instance there was no joint custody provision and the parties obviously had the financial ability to provide for regular visitation. Furthermore, the Court of Appeals affirmance in *Martinez* was predicated on its finding, like ours here, that the decision of the lower court was in the best interests of the child (see 57 NY2d 809, 811). Order affirmed, without costs. Mahoney, P. J., Kane, Main and Yesawich, Jr., JJ., concur.

Mikoll, J., dissents and votes to reverse in the following memorandum.
Mikoll, J. (dissenting). I respectfully dissent. The governing standard for changing prior custodial arrangements has been articulated by the Court of Appeals in *Friederwitzer v Friederwitzer* (55 NY2d 89) where the court said that custody should not be changed in the " 'absence of countervailing circumstances on consideration of the totality of circumstances' " (*id.,* at p 95). The trial court ruled here that the husband had "met his heavy burden of demonstrating a substantial change in circumstances". This conclusion is not supported by the record. In the instant matter, the parties formulated a detailed custody arrangement in the separation agreement which envisioned freedom of both to choose their own places of residence and which further provided that the father, in the case of the relocation of the wife, would pay for any transportation costs of the children incurred in furtherance of his custody rights. The court has disregarded the terms of this agreement in a mistaken reliance on *Weiss v Weiss* (52 NY2d 170). There are significant differences in the language of the separation agreement involved in *Weiss* so as to make its holding inapplicable here. The *Weiss* agreement, in simply providing that husband and wife may continue to live at such places as they might choose, made no reference to the children as did the instant agreement. There are other significant distinctions between the two cases. This petitioner remarried and her new spouse obtained a unique, firm, vocational offer after their marriage, requiring their move to California. In *Weiss,* however, the mother relocated on no more than a nebulous "opportunity" to resume a long-aborted singing career. The employment offer to the husband here came after petitioner's marriage to him so that when she married she had no idea that it would entail a move to California. In *Weiss,* the court specifically noted that its ruling would not be applicable to a case involving one of those admittedly rare situations "where the obligations undertaken by a divorced parent who marries anew require a dramatic change of locale" (*Weiss v Weiss,* 52 NY2d 170,

177, *supra*). The facts elicited in the hearing indicate that we have here what *Weiss* depicted as a "rare situation". Petitioner's move was undertaken in good faith, based upon the legitimate professional and financial concerns of petitioner's new husband and not at variance with the separation agreement (*Martinez v Konczewski*, 85 AD2d 717, affd 57 NY2d 809; see, also, *Matter of Kretser v Kretser*, 91 AD2d 797). Petitioner did not unilaterally attempt to move without regard to the joint custodial arrangement but brought this petition in a good-faith attempt to work out an equitable arrangement. Of significance also is the fact that the Family Court of Saratoga County, approximately two years ago, after a full hearing of all relevant circumstances, continued primary custody of the children with petitioner. The only change since that hearing has been petitioner's remarriage and move to California. This does not constitute sufficient countervailing circumstances so as to require that the primary custody of the children be changed. The order should be reversed, the prior joint custody arrangement continued, and the matter remitted to Family Court for a determination of appropriate visitation rights for respondent.